**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALan ZAMETKIN, On Behalf of Himself and All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FIDELITY MANAGEMENT & RESEARCH )<br>COMPANY, FIDELITY INVESTMENTS, )<br>FIDELITY BROKERAGE SERVICES LLC, )<br>FIDELITY INCOME FUND, EDWARD C. )<br>JOHNSON 3RD, ABIGAIL P. JOHNSON, )<br>ROBERT M. GATES, MARIE L. KNOWLES, )<br>NED C. LAUTENBACH, MARVIN L. )<br>MANN, WILLIAM O. MCCOY, WILLIAM )<br>S. STAVROPOULOS, TIMOTHY HAYES, )<br>ROBERT L. REYNOLDS, CHRISTINE )<br>REYNOLDS, GEORGE H. HEILMEIER, )<br>DENNIS J. DIRKS, STEPHEN P. JONAS, )<br>CORNELIA M. SMALL, KENNETH L. )<br>WOLFE, KIMBERLEY MONASTERIO, )<br>JOSEPH B. HOLLIS, JAMES C. CURVEY, )<br>ALBERT R. GAMPER AND JAMES H. )<br>KEYES, )<br>)<br>Defendants. )<br>) | C.A No. 1:08-cv-10960-MLW<br><br><u>Hearing Requested</u><br><br>**Leave to File Granted on**<br>**February 11, 2009** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF ALAN ZAMETKIN FOR APPOINTMENT AS LEAD PLAINTIFF**
<u>**AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL**</u>

Proposed lead plaintiff Alan Zametkin respectfully submits this reply memorandum of law in further support of his motion seeking appointment as Lead Plaintiff and approving his selection of Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**I.    PRELIMINARY STATEMENT**

In his opposition papers, competing movant Ian K. Maclennan challenges Alan Zametkin's lead plaintiff motion on the following grounds: (1) Mr. Zametkin is a net seller of shares of the

Fidelity Ultra-Short Bond Fund (the "Fund") and "has not accounted for the gains he had on the sale of 810 shares of the" Fund; (2) since he did not recognize those purported gains, Mr. Zametkin is inadequate because he failed to monitor counsel; (3) Mr. Zametkin filed a defective certification; and (4) Mr. Zametkin seeks appointment of co-lead counsel.  None of these arguments have merit.

In fact, Mr. Zametkin's opposition papers refute the bulk of these arguments.  Mr. Zametkin's updated certification, which includes information on shares of the Fund acquired through an automatic monthly dividend reinvestment, demonstrates that Mr. Zametkin was not a net seller of shares of the Fund.  This certification, dated August 18, 2008, along with an updated loss chart, unequivocally establishes that Mr. Zametkin incurred a loss from his transactions in the Fund of $20,424, a modest increase from his originally reported loss number, which, in any event, is still greater than the loss reported by Mr. Maclennan.

Nonetheless, should the Court only consider the loss figure of $19,880 from his initial papers, Mr. Zametkin still possesses the "largest financial interest" in this action.  Mr. Maclennan's attempt to claim that Mr. Zametkin really suffered a loss of $12,752 is misleading and untrue.  To arrive at that figure, Mr. Maclennan assumes that the proceeds received from the sale of the "extra" 810 shares are pure profit without any regard for the cost Mr. Zametkin allegedly "paid" for those shares.  In other words, Mr. Maclennan attributes a $0 per share cost basis to those alleged pre-class period holdings.  This defies common sense, is contrary to economic reality, and should be rejected.

Finally, Mr. Maclennan's attempts to portray Mr. Zametkin as inadequate because of "defects" in his certification or because he seeks appointment of co-lead counsel are insufficient to defeat his motion.  Consequently, since Mr. Zametkin is the "most adequate plaintiff" to represent the class, the Court should appoint him as Lead Plaintiff in this action.

## II.   ARGUMENT

### A.   Mr. Zametkin is not a "Net Seller"

Mr. Maclennan asserts that Mr. Zametkin should be disqualified from serving as Lead Plaintiff because it appeared as though he was a "net seller" of shares of the Fund, meaning that he supposedly sold more shares than he bought during the three year "class period."  That clearly is not the case.  While, as discussed below, net sellers are not *per se* disqualified from serving as lead plaintiffs, Mr. Zametkin is **not** a net seller of shares of the Fund, as reflected on his updated certification and loss chart.  These documents show that Mr. Zametkin acquired and then sold 14,772 shares of the Fund – *i.e.*, he sold the same amount as he bought – during the "class period" and, as a result, incurred a loss of $20,424.

As previously explained, Mr. Zametkin did not include on his initial certification the 810 shares of the Fund that he acquired through an automatic monthly dividend reinvestment. Ultimately, however, Mr. Zametkin revised his certification to include this information, which has the actual effect of modestly increasing his claimed losses.  Mr. Maclennan contends, however, that Mr. Zametkin cannot supplement his motion, under any circumstances, with additional information concerning his losses.  But that position is much too rigid.[1]

Mr. Zametkin is not attempting to manipulate his loss numbers to put himself ahead of Mr. Maclennan's losses.  Indeed, under any reasonable calculation, Mr. Zametkins's losses are greater. Rather, he is simply providing the Court with the most complete information regarding his losses.

---

[1]   Mr. Maclennan's suggestion that, because he did not include those shares received through a dividend reinvestment, there is a "conflict" between Mr. Zametkin and the class, or that he failed to monitor his counsel is absurd, and should be rejected.  *See In re Am. Bus. Fin. Servs.*, 2004 U.S. Dist. LEXIS 10200, at *10 (E.D. Pa. June 3, 2004) ("Beyond this one allegedly inaccurate calculation, the Pension Funds have presented no further evidence to rebut the presumption that the Engler Group will be able to adequately represent the class.").

Under these circumstances, courts have discretion and have permitted lead plaintiffs to correct minor issues regarding their certifications. *See Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, at *29-37 (S.D.N.Y. Dec. 26, 2007) (in permitting multiple revised certifications, court recognized that, "[a]lthough the procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are most capable of representing the interests of the class members."); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 410 (S.D.N.Y. 2004) (court recognized that, "under certain circumstances, movants may be permitted to clarify or further document their losses or correct any inaccuracies after their initial filing.").[2]

### B.   Mr. Maclennan's Calculation of Mr. Zametkin's Loss is Misleading

Assuming, *arguendo*, that the Court only considers Mr. Zametkin's initially reported loss of $19,880, that figure remains larger than the $16,911 loss reported by Mr. Maclennan. Yet, eschewing any reliable methodology,[3] Mr. Maclennan asserts that Mr. Zametkin's "actual" loss is $12,752. He arrives at that figure by subtracting the proceeds purportedly received from the sale of

---

[2]   Unless otherwise noted, all emphasis is added and citations are omited.

[3]   Mr. Zametkin had calculated his losses using the First-In, First-Out, or FIFO, methodology, which "is the appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status, just as it is the well-settled methodology for computing losses on securities for tax purposes." *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005). "Under FIFO, the status quo method, shares sold during the class period are matched with the first shares held or purchased at the beginning of the class period, whichever comes first." *Thompson v. Shaw Group, Inc.*, 2004 U.S. Dist. LEXIS 25641, at *14 (E.D. La. Dec. 14, 2004). Mr. Zametkin's losses under the competing Last-In, First-Out, or LIFO, methodology, which matches sales of shares first against the most recent purchases, are $19,467, which is still greater than Mr. Maclennan's losses. *See Bioenvision*, 2007 U.S. Dist. LEXIS 93470, at *18 ("Under LIFO, stocks which were acquired most recently are assumed to be sold first.").

the 810 "extra" shares of the Fund as pure profit or gain from Mr. Zametkin's $19,880 loss figure. In so doing, Mr. Maclennan completely ignores the fact that Mr. Zametkin would have incurred costs from the purchase of those 810 "extra" shares prior to the start of the three year "class period," which would have completely eliminated the so-called "gain" that Mr. Zametkin purportedly obtained. Indeed, because the price of the Fund's shares remained steady at or around $10 per share for the past several years until July 2007, Mr. Zametkin would have experienced an additional loss on any shares acquired pre-"class period."

Courts have rejected similar attempts by competing movants to calculate losses in a vacuum. For example, in *In re NPS Pharms., Inc.*, 2006 U.S. Dist. LEXIS 87231 (D. Utah Nov. 17, 2006), two movants disputed a third movant's loss figure, "arguing that [it] actually made a profit during the Class Period." *Id.* at *7. In finding this argument to be "without merit," the district court stated:

> In arguing that PHARMA actually made a profit during the Class Period, Dr. Leventhal and Williams & Rains focus exclusively on the stock purchased and sold by PHARMA during the Class Period, without recognizing the stock PHARMA held prior to the commencement of the Class Period. Dr. Leventhal and Williams & Rains show that PHARMA sold more shares than it purchased during the Class Period, and they treat the excess number of shares sold as pure gain to PHARMA. This ignores the economic reality of a stock sale, which requires that the sales price for a share of stock be matched with that share's cost basis, in order to calculate a profit or loss on the sale of that share. As demonstrated by PHARMA's submissions to the court, when this reality is recognized, Dr. Leventhal and Williams & Rains's argument is baseless.

*Id.* Here, too, by treating the excess shares that Mr. Zametkin purportedly sold as "pure gain" and ignoring the "economic reality" that those shares would have had a recognizable "cost basis," Mr. Maclennan clearly distorts Mr. Zametkin's losses. As such, even if the Court considers his analysis, Mr. Maclennan's alternative loss calculation is baseless. *Id.*[4]

---

[4]   Contrary to Mr. Maclennan's suggestion, a net seller may be appointed as a lead plaintiff so long as it is not a "net gainer" on its transactions in the corporation's stock. *Richardson v. TVIA,*

5

C.     **Mr. Zametkin's Initial Certification is not "Defective"**

Additionally, Mr. Maclennan argues that Mr. Zametkin's initial certification is "defective" because it "is not dated, and it does not satisfy the requirements under 28 U.S. §1746." This is easily dispatched.

As an initial matter, Mr. Zametkin's updated certification, which is dated August 18, 2008, cures this purported "defect." Next, to the extent that a missing date – where the certification contains the month and year of the execution – is considered a disqualifying "defect" (which it is not), this Court has discretion to disregard this technical issue. *Bioenvision*, 2007 U.S. Dist. LEXIS 93470, at *36 ("[T]he Court has discretion in the lead plaintiff appointment process and can decide to use or ignore the alleged technical (as opposed to substantive) inadequacy of a certificate as a determinative factor.").

Interestingly, counsel for Mr. Maclennan has successfully argued that technical defects in a certification should not disqualify a lead plaintiff movant with the "largest financial interest" in the action. In *In re Force Protection, Inc. Sec. Litig.*, No. 2:08-cv-845-CWH,[5] counsel's clients, the Chicago Laborers Group, faced a challenge to the sufficiency of their certifications. In rejecting this challenge, the district court held:

> The FRPT Group asserts that the Chicago Laborers Group's certifications were not timely and did not satisfy the requirements of the PSLRA because they were not signed under penalty of perjury. Although the certification did not exhibit the finest

---

*Inc.*, 2007 U.S. Dist. LEXIS 28406, at *12-13 (N.D. Cal. Apr. 16, 2007) ("[I]n cases involving net sellers who are also net losers, . . . , courts have held that a movant should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff."). In this regard, "unlike [those cases] in which the net sellers profited from the net sales, this case presents a situation in which the net seller has a greater financial loss than the net purchaser. Thus, [the net seller], who suffered the greater financial loss, is qualified to serve as the lead plaintiff." *Id.* at *14-15.

[5]     A copy of the slip opinion is attached as Exhibit A.

> draftsmanship, it is clear to the Court that it was the intention of the Chicago Laborers Group's members under the penalty of perjury the requirements of the PSLRA. Unless the Court is notified otherwise, it will continue to rely on this assumption.

*Id.* at 6 n.5.

Finally, it is noteworthy that Mr. Maclennan raises this alleged "defect" when his own certification contains a more serious deficiency. To be sure, Mr. Maclennan's certification omits information concerning his March 7, 2008 sale of 12,061.104 shares of the Fund at $8.59 for proceeds of $103,605. While Mr. Zametkin did not initially raise this issue, this omission highlights that Mr. Maclennan is operating with "unclean hands" and places his arguments in an appropriate context.

### D. Mr. Zametkin's Selection of Lead Counsel and Liaison Counsel is Appropriate

Although he questions why Mr. Zametkin "has proffered two firms as lead counsel," Mr. Maclennan does not claim that this fact renders Mr. Zametkin inadequate. As this Court is well aware, "[s]ecurities class litigation is notably difficult and notoriously uncertain." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 138 (S.D.N.Y. 2008). It is certainly proper for counsel in such cases to work together to share the risk and expenses associated with these types of cases, and retain local counsel residing in the jurisdiction to assist with administrative issues. In fact, Mr. Maclennan's counsel has had similar lead counsel structures approved in cases governed by the PSLRA. *See*, *e.g.*, *In re Force Protection*, slip op. at 10, 12 (appointing Berman DeValerio Pease Tabacco Burt & Pucillo and Pomerantz Haudek Block Grossman & Gross LLP as co-lead counsel with a local firm appointed as liaison counsel).

Here, Mr. Zametkin worked with his counsel to investigate the claims against the defendants and, as a result of those efforts, filed the initial complaint in this matter. And, counsel is committed to vigorously prosecuting this action in an efficient manner that will avoid unnecessary duplication

of work. As such, Mr. Zametkin's selection of Co-Lead Counsel and Liaison Counsel is appropriate and should be approved by this Court.

### III.   CONCLUSION

For all the foregoing reasons, Mr. Zametkin respectfully requests that the Court: (i) appoint him as Lead Plaintiff in the action; (ii) approve his selection of Lead Counsel and Liaison Counsel as set forth herein; and (iii) grant such other relief as the court may deem just and proper.

DATED: February 11, 2009                              Respectfully submitted,

*/s/ Adam M. Stewart*
Thomas G. Shapiro (BBO#454680)
Adam M. Stewart (BBO#661090)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA  02109
Telephone:  (617) 439-3939
Facsimile:  (617) 439-0134
tshapiro@shulaw.com
astewart@shulaw.com

[Proposed] Liaison Counsel

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARK S. REICH
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@csgrr.com
drosenfeld@csgrr.com
mreich@csgrr.com

        COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        DOUGLAS WILENS
        120 E. Palmetto Park Road, Suite 500
        Boca Raton, FL  33432-4809
        Telephone:  561/750-3000
        561/750-3364 (fax)
        dwilens@csgrr.com

        DYER & BERENS LLP
        ROBERT J. DYER III
        JEFFREY A. BERENS
        682 Grant Street
        Denver, CO  80203
        Telephone:  303/861-1764
        303/395-0393 (fax)
        bob@dyerberens.com
        jeff@dyerberens.com

        [Proposed] Lead Counsel for Plaintiffs

        HOLZER HOLZER & FISTEL, LLC
        COREY D. HOLZER
        MICHAEL I. FISTEL, JR.
        1117 Perimeter Center West, Suite E-107
        Atlanta, GA  30338
        Telephone:  770/392-0090
        770/392-0029 (fax)
        cholzer@holzerlaw.com
        mfistel@holzerlaw.com

        Additional Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 11, 2009.

        **/s/ Adam M. Stewart**
        Adam M. Stewart