UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN ZAMETKIN, On Behalf of Himself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY, et al.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 1:08-cv-10960-MLW<br>)<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
<u>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**</u>

## I. INTRODUCTION

Lead Plaintiff Alan Zametkin ("Lead Plaintiff" or "Plaintiff") respectfully submits this Memorandum of Law in Support of his Unopposed Motion for Preliminary Approval of Settlement, on the terms set forth in the Stipulation of Settlement dated June 17, 2011 ("Stipulation" or "Settlement"),[1] which is being filed concurrently herewith. The proposed Settlement provides for the payment of $7,500,000 in cash to resolve this securities class action against Defendants.[2]

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests this Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) certifying the Class pursuant to Rule 23(b)(3) for purposes of effectuating the proposed Settlement; (3) directing that Class Members be given notice of the pendency of this Litigation and the proposed Settlement in substantially the same form and manner set forth in the Stipulation; (4) setting a hearing date for the Court to consider final approval of the proposed Settlement and related matters ("Settlement Hearing"); and (5) setting a schedule for various events related thereto.

For the reasons discussed herein, the proposed Settlement is a very good result for the Class under the circumstances, satisfies the governing standards in this Circuit, and is well within

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation.

[2] Defendants Fidelity Management & Research Company, FMR Corp. (a/k/a "Fidelity Investments"), Fidelity Brokerage Services, LLC, James C. Curvey, Timothy Hayes, Joseph B. Hollis, Abigail Johnson, Edward C. Johnson 3rd, Stephen P. Jonas, Kimberley Monasterio, Christine Reynolds, and Robert L. Reynolds (collectively, "Defendants"), consent to the relief sought herein.

the range of fairness, adequacy and reasonableness so as to warrant the Court's preliminary approval and authorization for dissemination of notice of its terms to Class Members.

## II.     BACKGROUND OF THE LITIGATION

This is a securities class action on behalf of all persons and entities who purchased or otherwise acquired Fidelity Ultra-Short Bond Fund (the "Fund") shares between June 6, 2005 and June 5, 2008, seeking to pursue remedies under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").

On June 5, 2008, Plaintiff filed his initial complaint alleging that Defendants offered and sold shares of the Fund to the public through registration statements and prospectuses that were materially false and misleading.  On February 23, 2009, the Court issued an order appointing Alan Zametkin as Lead Plaintiff and appointing the law firms of Robbins Geller Rudman & Dowd LLP (formerly known as Coughlin Stoia Geller Rudman & Robbins LLP) and Dyer & Berens LLP as Lead Counsel, and Shapiro Haber & Urmy LLP as Liaison Counsel.

After undertaking an additional investigation of his claims, including identifying, contacting and interviewing confidential witnesses, Plaintiff filed his Amended Complaint on April 23, 2009, to which Defendants filed a motion to dismiss on July 17, 2009.  After Defendants' motion was fully briefed, Defendants consented to the filing of the Second Amended Complaint ("SAC") by Plaintiff on April 8, 2010.  On May 24, 2010, Defendants again moved to dismiss the SAC, which was opposed by Plaintiff on August 5, 2010. Defendants filed their reply on September 7, 2010.  On November 15, 2010, the Court conducted a hearing and Chief Judge Mark L. Wolf, ruling from the bench, denied Defendants' motion to dismiss the SAC (with the exception of Plaintiff's §11 claim against defendant Fidelity

Investments, which was granted).

Pending resolution of Defendants' motion to dismiss the SAC, proceedings in the case were stayed pursuant to the Private Securities Litigation Reform Act ("PSLRA"). Once the motion to dismiss was denied, counsel for the parties met in-person on December 8, 2010, and agreed to explore the possibility of settlement at a formal mediation session. In connection with these initial discussions, Defendants voluntarily produced information concerning the Class size, including Fund share purchases, acquisitions and redemptions during the Class Period. Additionally, while no formal discovery was commenced prior to settlement of the Litigation, Plaintiff prepared informal, written requests consisting of nine categories of documents, to which Defendants produced relevant documents prior to the mediation.

On April 14, 2011, Plaintiff and Defendants engaged in mediation proceedings before David Geronemus, which resulted in a written memorandum of understanding ("MOU") and the proposed Settlement of the Litigation. The MOU provided, among other things, that prior to executing a stipulation of settlement, Defendants would provide additional confirmatory discovery. Defendants ultimately provided Plaintiff with approximately seven thousand pages of documents and made available two knowledgeable representatives, including the Fund's portfolio manager, Robert Galusza, who were interviewed by Lead Counsel regarding the allegations in the SAC and Defendants' internal documents. Thereafter, on June 17, 2011, the parties executed the Stipulation.

## III.  BRIEF SUMMARY OF THE PROPOSED SETTLEMENT

### A.  The Settlement Class

Plaintiff Alan Zametkin, as Lead Plaintiff and the proposed Class Representative for the Settlement Class, and Lead Counsel as proposed Settlement Class Counsel, negotiated the proposed Settlement on behalf of a Class consisting of all persons and entities who purchased or otherwise acquired shares of the Fidelity Ultra-Short Bond Fund between June 6, 2005 and June 5, 2008, inclusive ("Class").  Excluded from the Class are persons or entities who submit valid and timely requests for exclusion from the Class, and Defendants, members of the immediate families of the individual defendants, current or former directors or officers of defendants, or legal representatives, heirs, successors, or assigns of any excluded party.

### B.  Settlement Consideration

As consideration for the proposed Settlement, Defendants have agreed to pay or cause to be paid $7,500,000.00 in cash into a separate interest-bearing account maintained by the Escrow Agent within ten (10) business days of the date of entry of the Order Preliminarily Approving Settlement and Providing for Notice (Exhibit A to the Stipulation) ("Funding Date").

### C.  Release of Claims

In return for the above consideration, the Settlement Class Members will release all Settled Claims and Unknown Claims against any and all of the Defendants, the Fidelity Income Fund, the Fidelity Ultra-Short Bond Fund and each of their respective present and former parents, subsidiaries, affiliates, officers, directors, employees, general or limited partners or partnerships, foundation, trusts, principals, trustees, attorneys, legal counsel, investment advisers,

subadvisers, auditors, accountants, investment bankers, consultants, agents, insurers, co-insurers, heirs, executors, administrators, predecessors, successors and assigns ("Released Parties").

### D.     Entry of Order and Final Judgment

Upon determination by the Court that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, the parties will ask the Court to enter the Order and Final Judgment (Exhibit B to the Stipulation).  The Order and Final Judgment provides, *inter alia*, that upon the Effective Date, Plaintiff and each of the Class Members who have not timely opted out of the Class as well as others described therein ("Class Releasors"), are permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against Defendants or any Released Parties in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Settled Claims (including Unknown Claims), as well as any other claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Litigation or the Settled Claims.

### E.     Fee and Expense Applications

Under the Stipulation, Lead Counsel may submit an application or applications ("Fee and Expense Applications") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees, not to exceed thirty percent (30%) of Settlement Fund; plus (b) payment of expenses of up to $175,000, which includes the fees of Plaintiff's investigators, experts and consultants, incurred in connection with prosecuting the Litigation, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid).  In addition, Lead Plaintiff may seek reimbursement from the Settlement Fund pursuant to 15 U.S.C. §78z-1(a)(4) for his time and expenses incurred in

connection with the Litigation in an amount up to $15,000. The Fee and Expense Applications shall be filed pursuant to the briefing schedule to be determined by the Court.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Before preliminarily determining whether the proposed Settlement is fair, the Court must determine whether to certify the class for settlement purposes. *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 101 (D. Mass. 2010). When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir.2000) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005). This cautionary approach notwithstanding, the law favors class action settlements. *Id.* at 88 (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

Under the terms of the Stipulation, the parties have agreed for the sole purpose of the Settlement and without an adjudication of the merits, to certification of the Class. Indeed, the transcript from the hearing on Defendants' motion to dismiss the SAC includes comments by the Court suggesting that it agrees it is appropriate to certify the Class in this Litigation. *See* Motion to Dismiss Hr'g Tr. at 93:2-8, Nov. 15, 2010 (commenting that based upon the Court's careful review of Dr. Zametkin at the lead plaintiff stage, "Zametkin is an adequate representative, and so there's probably going to be class certification, unless there's something I'm missing.").

Notwithstanding, to obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3). *Hochstadt*, 708 F. Supp. 2d at 102 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)). Here, Plaintiff asserts that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied in that:

>   (a)  the proposed Settlement Class is so numerous that joinder of all members is impracticable as there were millions shares of the Fund outstanding during the Class Period, held by hundreds or thousands of shareholders geographically dispersed across the country;
>
>   (b)  based on Plaintiff's allegations that Defendants purportedly engaged in uniform misconduct affecting the Settlement Class Members, the claims of Plaintiff are typical of the claims of the proposed Settlement Class he seeks to represent;
>
>   (c)  Plaintiff does not have any interests antagonistic to, or in conflict with, the other members of the Settlement Class and he will fairly and adequately represent and protect the interests of the other members of the Settlement Class as he has retained counsel competent and experienced in class and securities litigation;
>
>   (d)  there are questions of law or fact common to the Settlement Class which predominate over any questions solely affecting individual members of the Settlement Class including: (i) whether the Securities Act was violated by Defendants' acts; (ii) whether the registration statements and prospectuses negligently omitted and/or misrepresented material facts about the Fund; (iii) whether the registration statements and prospectuses contained untrue statements of material fact; and (iv) to what extent the members of the Settlement Class have sustained damages and the proper measure of damages; and
>
>   (e)  given that joinder of all Settlement Class Members is impracticable, certifying a Settlement Class is superior to all other available methods for the fair and efficient adjudication of this controversy since prosecuting separate actions by or against individual Settlement Class Members would create a risk of: (i) inconsistent or varying adjudications with respect to

> individual Settlement Class Members that would establish incompatible standards of conduct for Defendants; and (ii) adjudications with respect to individual Settlement Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*See* SAC at ¶¶ 142-147; *see also, e.g., In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 WL 2410361, at *1 (D.N.H. Aug. 21, 2007) (concluding requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) were satisfied for purposes of preliminary settlement approval); *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010) (explaining some types of cases are uniquely well-suited to class adjudication, and predominance is a test readily met in certain cases alleging consumer or securities fraud); *In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007) (citing other cases and stating in a securities class action, a plaintiff can generally demonstrate numerosity on the basis of a large number of shares outstanding and traded). Accordingly, the Court should certify the Settlement Class and appoint Plaintiff as the Class Representative.

## V.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

Under Rule 23(e), claims of a certified class may be settled "only with the court's approval." Fed. R. Civ. P. 23(e). The purpose of requiring court approval of a class action settlement is to ensure that the settlement is fair, adequate and reasonable. *See In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009). In determining whether to approve the proposed Settlement, the Court should follow the two-step process outlined in the Manual for Complex Litigation. Manual for Complex Litigation, Fourth

("MCL"), §§ 21.632 to 21.635; *see, e.g., Hochstadt*, 708 F. Supp. 2d at 97 n.1, 106-08 (applying the analysis provided by the MCL and preliminarily approving class action settlement).

The first step of the process is for the Court to review the proposed terms of the Settlement and make a "preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Hochstadt*, 708 F. Supp. 2d at 107 (quoting MCL § 21.632). At this stage, the Court should examine whether the proposed Settlement is within the range of possible approval, bearing in mind that the Court, as well as any objectors, will have the opportunity to consider all the relevant factors at the fairness hearing. *See Hochstadt*, 708 F. Supp. 2d at 107-08. Unless this preliminary evaluation discloses reasons to doubt the fairness of the proposed class settlement or other obvious deficiencies, the Court should grant the motion for preliminary approval, and direct the preparation of the notice of certification of the settlement class, the proposed settlement, and the date of the final fairness hearing. *See* MCL § 21.633 & n.976; *Hochstadt*, 708 F. Supp. 2d at 106-07.

The second step of the process, provided the court has preliminarily approved the proposed settlement, is for the court to conduct a formal fairness hearing where arguments and evidence may be presented in support of, or in opposition to, the class settlement as being fair, reasonable, and adequate. *See* MCL § 21.634. At the conclusion of the formal fairness hearing, the court will then determine whether final approval of the class settlement should be granted. MCL § 21.634.

Here, the Court should preliminarily approve the parties' proposed Settlement. It is well-established in this Circuit that there is a "clear policy in favor of encouraging settlements." *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). While the

9

parties still must show that the proposed Settlement is reasonable under Rule 23, the "court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard." *National Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 45 (1st Cir. 2009). Rule 23's reasonableness standard has been given substance by case law offering laundry lists of factors, most of them intuitively obvious and dependent largely on variables that are hard to quantify; usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement. *Id.* at 44. This task of balancing the benefits and costs is routinely accomplished by an evaluation of four factors. *See Hochstadt*, 708 F. Supp. 2d at 107. Specifically, a presumption of fairness attaches to the court's determination to preliminarily approve a class settlement "when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citation omitted). For the reasons set forth below, these four factors weigh heavily in favor of preliminary approval of the proposed Settlement.

### A. The Negotiations Occurred At Arm's Length

In response to the Court's suggestion at the conclusion of the motion to dismiss hearing, counsel for the parties met in-person on December 8, 2010, and agreed to explore the possibility of settlement through a formal mediation session. The parties ultimately agreed to utilize the services of David Geronemus of JAMS, a well-respected mediator with significant experience

with this type of litigation. Prior to the mediation, the parties held a joint, pre-mediation telephonic conference with the mediator, and thereafter prepared and exchanged comprehensive mediation statements. On April 14, 2011, Plaintiff and Defendants attended a full-day mediation session at JAMS in New York City. In additional to counsel for the parties, the mediation was attended by Lead Plaintiff Alan Zametkin and representatives for several of the Defendants. As a result of the mediation session, and with the assistance of the neutral mediator, the parties executed a written MOU for the proposed Settlement of this Litigation. Thus, none of the terms of the proposed Settlement are the product of fraud, collusion, or abandonment of the interests of the Settlement Class. Rather, the proposed Settlement resulted from arm's length negotiations between experienced counsel. Under these circumstances, the time spent and the efforts made by the parties are persuasive indicators that the Stipulation and proposed Settlement were not the result of collusion but rather the result of negotiations conducted at arm's length. *See Hochstadt*, 708 F. Supp. 2d at 107.

### B.     A Sufficient Investigation Was Conducted

Due to the automatic stay imposed by the PSLRA pending resolution of Defendants' motions to dismiss, no formal discovery was commenced prior to the Court's order upholding the claims in the SAC. *See* 15 U.S.C. § 77z-1(b)(1) (PSLRA's automatic stay of discovery). Plaintiff has, however, undertaken a significant, continuing investigation in connection with the filing of the initial complaint, the Amended Complaint and the SAC. Moreover, Defendants provided Plaintiff with relevant documentary evidence prior to the mediation and thereafter concerning agreed-upon informal discovery.

*First*, in connection with Plaintiff's initial complaint, Lead Counsel undertook an extensive review of, among other things, the Fund's SEC filings, registration statements, prospectuses, periodic reports, statements of additional information, press releases, marketing materials and other publicly-available information.  After Plaintiff was appointed Lead Plaintiff by this Court, counsel continued this investigation and greatly expanded it by working with investigators to identify and interview numerous former employees and other witnesses, who ultimately provided significant information that was utilized in the Amended Complaint and SAC (and upon which this Court relied, in part, in denying the motions to dismiss).  Thereafter, in drafting the SAC, this investigation was again substantially expanded to include review and analysis of many of the hundreds of securities held directly in the Fund and indirectly via the internal Fidelity Central Fund, during the Class Period.

*Second*, in connection with the mediation efforts, Plaintiff prepared informal, written requests consisting of nine categories of documents, to which Defendants produced documents on March 29, 2011.  These documents, and the records related to class size produced earlier by Defendants, were utilized by the parties in connection with the mediation.

*Third*, the MOU executed by the parties at the mediation provided, among other things, that prior to executing the Stipulation, Defendants would provide additional confirmatory discovery, including an expanded production of documents responsive to Plaintiff's earlier requests.  Defendants ultimately provided Plaintiff with approximately seven thousand pages of documents and provided two knowledgeable representatives, including the Fund's portfolio manager, who were interviewed by Lead Counsel regarding these documents and the allegations in the SAC.

Given this extensive information, developed and gathered during the three years that this Litigation has been pending, Plaintiff and his counsel are able to fully evaluate the merits of the claims, the risks of continued litigation, and to make an intelligent judgment about settlement. *See Hochstadt*, 708 F. Supp. 2d at 107.

### C.    The Proponents Of The Settlement Are Experienced In Similar Litigation

The experience of Plaintiff's Counsel in this case is reflected in the following: (1) their extensive, ongoing factual investigation (as described above); (2) their filing of successive complaints including the Amended Complaint on April 23, 2009 and the SAC on April 8, 2010, both of which Defendants moved to dismiss and which Plaintiff opposed; and (3) their involvement with the informal and confirmatory discovery, and their retention of an outside expert.  In addition, Plaintiff's Counsel have significant class action experience prosecuting securities and related investor disputes, as previously determined by this Court at the lead plaintiff stage when the Court appointed Lead and Liaison Counsel.  *See* Order issued February 23, 2009 (Dkt. No. 39); *see also Hochstadt*, 708 F. Supp. 2d at 108 (concluding the proponents of the settlement are experienced in similar litigation after evaluating analogues events).

### D.    Number of Objections

Since the notice to the Settlement Class has not yet been issued, this factor can only be assessed preliminarily.[3]  *See Hochstadt*, 708 F. Supp. 2d at 108.  There are currently no known objectors to the Stipulation and proposed Settlement.  Rather, the parties and their counsel believe that the proposed Settlement is fair, adequate and reasonable.  Plaintiff has actively

---

[3]    In the event any objections are received after notice is disseminated, those objections will be addressed by Lead Counsel in connection with the motion for final approval of the Settlement.

participated throughout the prosecution of his claims, he attended the mediation and he was actively involved in the decision to enter into the settlement with Defendants. Moreover, counsel on both sides have weighed the costs, risks and delay associated with continuing litigation against the benefits of settlement as reflected in the Stipulation. *See* Stipulation at §§ II & III. Plaintiff's Counsel believe that settlement at this time, and as provided in the Stipulation is fair, reasonable, and adequate resolution of the Litigation, and in the best interests of Plaintiff and the Settlement Class Members since it confers substantial benefits upon the Settlement Class while eliminating: (i) the uncertainty of future relief after protracted and expensive litigation including the difficulties of proof under and possible defenses to the securities law violations asserted in the Litigation; and (ii) the risk that Plaintiff may not ultimately prevail and thus may not secure any post trial relief.

Under these circumstances, the Court should preliminarily approve the proposed Settlement as fair, adequate and reasonable and instruct notice to be issued to the Settlement Class.

## VI.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER OF CLASS NOTICE AND THE PROOF OF CLAIM AND RELEASE

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed Settlement. Fed. R. Civ. P. 23(e)(1). Due process requires that Class Members be apprised of their rights with respect to the proposed Settlement, be provided with enough information to make an informed decision, and be afforded a full and fair opportunity to participate in the proceedings convened to determine whether the proposed Settlement should be given final approval. *See Bennett v. Roark Capital Group, Inc.*,

No. 2:09-cv-00421-GZS, 2011 WL 1627939, at *2 (D. Me. Apr. 27, 2011). Here, the proposed form and manner of the Notice satisfy these requirements.

As more fully detailed in the Stipulation, Lead Counsel will cause the Notice (Exhibit A-1 to Stipulation) to be mailed to all shareholders of record identified by Defendants or the transfer agent. A summary notice (Exhibit A-3 to Stipulation) will be published once in the national edition of *Investor's Business Daily* and once over the *Business Wire*. This proposed method of giving notice to Settlement Class Members is appropriate because it is "the best notice practicable under the circumstances" and will provide "due and sufficient notice to all persons entitled thereto." *In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 WL 2410361, at *2 (D.N.H. Aug. 21, 2007).

Moreover, the content of the Notice includes the general terms of the Settlement as set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Applications, the date of the Settlement Hearing, as well as the other details required by the PSLRA. *Compare* Notice (Exhibit A-1 to Stipulation) *with* 15 U.S.C.A. § 77z-1(a)(7) (disclosure of settlement terms to class members). The information is also provided in a format that is accessible to the reader. The Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement. The Notice also provides recipients with the contact information for the Claims Administrator and Lead Counsel. Accordingly, the proposed Notice provides Settlement Class Members with all information required by Rule 23(e), the PSLRA and due process. Plaintiff therefore respectfully requests that the Court direct that Settlement Class Members be given notice of the pendency of this Litigation and the Settlement in the form and method set forth in the Stipulation.

**VII. PROPOSED SCHEDULE OF EVENTS**

Provided that the Court grants preliminary approval to the proposed Settlement, Plaintiff respectfully requests the Court set a schedule of events to govern the remaining procedural aspects of the proposed Settlement, subject to the Court's convenience:

| Event | Time For Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members (the "Notice Date") | Within 20 business days after entry of the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") |
| Deadline for publishing the Summary Notice in *Investor's Business Daily* and once over the *Business Wire* | 7 calendar days after the Notice Date |
| Deadline for filing Proof of Claim and Release forms | 90 calendar days following the Notice Date |
| Deadline for submitting exclusion requests or objections | 14 calendar days before the Settlement Hearing |
| Filing of memoranda in support of final approval of the Settlement and Plan of Allocation, or in support of the Fee and Expense Applications | 21 calendar days before the Settlement Hearing |
| Filing of reply memoranda in support of final approval of the Settlement and Plan of Allocation, or in support of the Fee and Expense Applications | 7 calendar days before the Settlement Hearing |
| Final Settlement Hearing | Approximately 90 calendar days following execution of the proposed Preliminary Approval Order, or later, as the Court's calendar allows |

## VIII. CONCLUSION

For the foregoing reasons, the proposed Settlement warrants this Court's preliminary approval and Plaintiff respectfully requests this Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice (Exhibit A to the Stipulation), set a schedule of events to govern the remaining procedural aspects of the proposed Settlement, and grant such further relief as the Court deems just and reasonable.

DATED: June 17, 2011

Respectfully submitted,

SHAPIRO HABER & URMY LLP

/s/ Adam M. Stewart
Thomas G. Shapiro (BBO #454680)
Adam M. Stewart (BBO #661090)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: 617/439-3939
617/439-0134 (fax)
tshapiro@shulaw.com
astewart@shulaw.com

*Liaison Counsel*

ROBBINS GELLER RUDMAN &
DOWD LLP
Samuel H. Rudman
Evan J. Kaufman
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

DYER & BERENS LLP
Robert J. Dyer III
Jeffrey A. Berens
303 East 17th Avenue, Suite 300
Denver, CO 80203
Telephone: 303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

*Co-Lead Counsel for Plaintiff*

HOLZER HOLZER & FISTEL, LLC
Corey D. Holzer
Michael I Fistel, Jr.
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770/392-0090
770-392/0029 (fax)
cholzer@holzerlaw.com
mfistel@holzerlaw.com

*Additional Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 17, 2011.

/s/ Adam M. Stewart
Adam M. Stewart
