UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALAN ZAMETKIN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:08-cv-10960-MLW |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |
| FIDELITY MANAGEMENT & RESEARCH COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

700876_1

# TABLE OF CONTENTS

                                                                                        **Page**

I.      INTRODUCTION .................................................................................................1

II.     HISTORY OF THE LITIGATION .....................................................................2

III.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS
        REQUIREMENTS.................................................................................................5

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT...........7

        A.      The Settlement Before the Court ...........................................................7

        B.      The Standards for Judicial Approval of Class Action Settlements.........7

        C.      The Settlement Satisfies the Criteria for Approval.................................9

                1.      The Complexity, Expense, and Likely Duration of the Litigation .............9

                2.      The Reaction of the Class to the Settlement ...............................................10

                3.      Stage of Proceedings and Extent of Discovery.........................................10

                4.      The Risks of Establishing Liability and Damages.....................................12

                5.      Maintaining the Class Action Throughout Trial........................................13

                6.      The Ability of Defendants to Withstand a Greater Judgment...................13

                7.      The Settlement Offers a Meaningful Benefit to the Class.........................14

V.      THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND
        REASONABLE AND SHOULD ALSO BE APPROVED.................................................14

VI.     CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Decision One Mortg. Co., LLC*,
No. 07-11669-GAO, 2010 WL 1930148 (D. Mass. May 12, 2010)........................................8

*Bennett v. Roark Capital Grp., Inc.*,
No. 2:09-cv-00421-GZS, 2011 WL 1627939 (D. Me. Apr. 27, 2011).....................................8

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ........................................................................................10

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)....................................................................................................................9

*DeJulius v. New Eng. Health Care Employees Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ..................................................................................................5

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................................................8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...........................................................................................9, 10, 13

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005)..............................................15

*In re Chicken Antitrust Litig.*,
810 F.2d 1017 (11th Cir. 1987) ..............................................................................................14

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)....................................................................................7, 8, 10

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) .....................................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).............................14, 15

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)....................................................................................................10

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005).................................................................................................8

- ii -

**Page**

*In re StockerYale, Inc. Sec. Litig.*,
 No. 1:05cv00177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007)................................ *passim*

*In re Telectronics Pacing Sys.*,
 137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................................7

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir.2004)...............................................................................12, 13, 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
 No. 92 Civ. 1152 (RWS), 1997 WL 7668 (S.D.N.Y. Jan. 9, 1997) ..........................15

*Mullane v. Cen. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950)....................................................................................................5

*Rolland v. Cellucci*,
 191 F.R.D. 3 (D. Mass. 2000)...................................................................................7, 9

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
 No. IP00-1232-C-B/S, 2001 WL 987840 (S.D. Ind. Aug. 28, 2001) .........................5

*White v. National Football League*,
 822 F. Supp. 1389 (D. Minn. 1993).........................................................................14

*Whitford v. First Nationwide Bank*,
 147 F.R.D. 135 (W.D. Ky. 1992)...............................................................................8

*Williams v. First Nat'l Bank*,
 216 U.S. 582 (1910)....................................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §77k..........................................................................................................................2, 3
 §77l(a)(2) .....................................................................................................................2
 §77o.............................................................................................................................2
 §77z-1(a)(4) ...........................................................................................................1, 10

Federal Rules of Civil Procedure
 Rule 23 ..................................................................................................................5, 6, 7
 Rule 23(b)(3)...............................................................................................................5
 Rule 23(c)(2)(B)..........................................................................................................5
 Rule 23(e)...........................................................................................................1, 8, 14
 Rule 23(e)(1)................................................................................................................5

700876_1

## I.      INTRODUCTION

Lead Plaintiff Dr. Alan Zametkin ("Lead Plaintiff," "Plaintiff" or "Dr. Zametkin") respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds.[1] Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests an order granting final approval of: (i) the proposed Settlement[2] of this securities class action (the "Litigation") on behalf of a class (the "Class") consisting of all persons and entities (other than the Excluded Persons) who purchased or otherwise acquired Fidelity Ultra-Short Bond Fund (the "Fund") shares between June 6, 2005 and June 5, 2008, inclusive; and (ii) the Plan of Allocation of settlement proceeds which will govern how the Net Settlement Fund will be allocated among Class Members. Pursuant to the Stipulation, the parties and their counsel have agreed to a settlement of the Litigation for the sum of $7,500,000 in cash, plus interest ("Settlement Fund" or "Gross Settlement Fund"). The Settlement resolves all claims asserted by Lead Plaintiff and the Class in the Litigation against Defendants.

As discussed below and in the accompanying Joint Declaration of Jeffrey A. Berens and Evan J. Kaufman in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Lead Plaintiff Reimbursement Pursuant to 15 U.S.C. §77z-1(a)(4) ("Joint Decl."), the

---

[1]      Defendants Fidelity Management & Research Company ("Fidelity"), FMR Corp. (a/k/a "Fidelity Investments"), Fidelity Brokerage Services, LLC, James C. Curvey, Timothy Hayes, Joseph B. Hollis, Abigail Johnson, Edward C. Johnson 3d, Stephen P. Jonas, Kimberley Monasterio, Christine Reynolds, and Robert L. Reynolds (collectively, "Defendants"), consent to the relief sought herein.

[2]      All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation of Settlement (the "Stipulation"), filed with the Court on June 17, 2011 (Docket No. 92).

- 1 -

Court should grant final approval of the Settlement.  The Settlement is fair, reasonable, and adequate, and a very good result for the Class under the circumstances.  The $7.5 million Settlement, which resulted from arm's-length negotiations with counsel for the Defendants and the assistance of a respected mediator, is very fair.  This assessment is particularly apparent when evaluated in light of the many factual and legal difficulties that Plaintiff would have to overcome in order to prove at trial Defendants' liability and the amount of recoverable damages suffered by the Class.

Plaintiff also requests that the Court approve the Plan of Allocation of settlement proceeds. This plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.  The plan was arrived at with the assistance of Plaintiff's damage consultant and follows the damage theory developed for the Litigation.  The plan is fair, reasonable, and adequate and should be approved.

## II.    HISTORY OF THE LITIGATION

The following is a brief procedural history of the Litigation.  The Court is respectfully referred to the Joint Declaration for a more detailed description of the Litigation, including a factual summary of Plaintiff's allegations.  *See* Joint Decl., ¶¶8-15.

On June 5, 2008, Plaintiff filed his initial complaint in the United States District Court for the District of Massachusetts alleging that Defendants violated §§11, 12(a)(2), and 15 of the Securities Act of 1933 by offering shares of the Fund to the public through materially false and misleading registration statements and prospectuses.  The case was assigned to Chief Judge Mark L. Wolf. Pending resolution of Defendants' anticipated motion to dismiss, proceedings in the Litigation were automatically stayed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

700876_1

On February 23, 2009, the Court entered its order appointing Dr. Zametkin as Lead Plaintiff in the Litigation and approving his selection of Robbins Geller Rudman & Dowd LLP (formerly known as Coughlin Stoia Geller Rudman & Robbins LLP) and Dyer & Berens LLP to serve as Lead Counsel and Shapiro Haber & Urmy LLP to serve as Liaison Counsel.  *See* Docket No. 39.

On April 23, 2009, Lead Plaintiff filed his Amended Complaint.  *See* Docket No. 41.  The Amended Complaint removed certain defendants that were named in the initial complaint (based on a tolling agreement entered into with respect to those defendants and Lead Plaintiff) and added considerable detail to Plaintiff's substantive allegations based on information obtained through Lead Counsel's continued investigation, factual and legal research, and interviews with confidential witnesses – two of whom had direct, first-hand knowledge about the business and operations of the Fidelity entities and the Fund.

Between July 17, 2009 and March 3, 2010, the parties submitted extensive briefing and supplemental authority on Defendants' motion to dismiss the Amended Complaint.  On April 7, 2010, Plaintiff filed an assented-to motion for leave to file the Second Amended Complaint for Violation of the Federal Securities Laws ("SAC") with an agreed-upon proposed briefing schedule for the anticipated motion to dismiss.  *See* Docket No. 65.  On April 8, 2010, this Court granted Plaintiff's motion for leave to file the SAC and accepted it for filing.  *See* Docket Nos. 66-67. Between May 24, 2010 and September 7, 2010, the parties again submitted extensive briefing on Defendants' motion to dismiss the SAC.

On November 15, 2010, this Court conducted a three-hour long hearing on Defendants' motion to dismiss the SAC.  After thorough oral argument from counsel for each side, the Court denied Defendants' motion to dismiss the SAC (with the exception of Plaintiff's §11 claim against defendant Fidelity Investments, which was granted).  *See* Docket Nos. 78-80.  At the conclusion of

700876_1

the hearing, the Court suggested that the parties consider exploring the possibility of settlement. *See* Docket Nos. 90-92.

Thereafter, counsel for the parties met in-person on December 8, 2010, and agreed to explore the possibility of settlement at a formal mediation session.   In connection with these initial discussions, Defendants voluntarily produced information concerning the Class size, including Fund share purchases, acquisitions, and redemptions during the Class Period.   Additionally, while no formal discovery was commenced prior to settlement of the Litigation, Plaintiff prepared informal, written requests consisting of nine categories of documents, to which Defendants produced relevant documents prior to the mediation.

On April 14, 2011, Plaintiff and Defendants engaged in mediation proceedings before David Geronemus of JAMS, which later led to a written memorandum of understanding ("MOU") and the proposed Settlement of the Litigation.   The MOU provided, among other things, that prior to executing a stipulation of settlement, Defendants would provide additional, agreed upon confirmatory discovery.   Defendants ultimately provided Plaintiff with approximately seven thousand pages of documents and made available two knowledgeable representatives, including the Fund's portfolio manager, Robert Galusza, who were interviewed by Lead Counsel regarding the allegations in the SAC and Defendants' internal documents.   Following extensive negotiations, on June 17, 2011, the parties executed the Stipulation.   Later that same day, Plaintiff filed with this Court an unopposed motion for preliminary approval of settlement, accompanying memorandum of law, and the parties' Stipulation.   *See* Docket Nos. 90-92.

On December 23, 2011, following an appearance by the parties, the Court granted Plaintiff's unopposed motion for preliminary approval of the Settlement.   *See* Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (Docket No. 95).

700876_1

### III.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Under Federal Rule of Civil Procedure 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. *DeJulius v. New Eng. Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. Const. amend. V). Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The law requires "'adequate notice,' not perfect notice." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, No. IP00-1232-C-B/S, 2001 WL 987840, at *20 (S.D. Ind. Aug. 28, 2001). Here, the Notice, in plain easily understood language advises the Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting Proof of Claim forms, objections and requests for exclusion to the Settlement, who to contact for additional information, and provides specifics regarding the date, time, and place of the Settlement Hearing. The Notice also contains information regarding Plaintiff's Counsel's attorneys' fee and expense application, Lead Plaintiff's expense application and the Plan of Allocation. Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

In the Preliminary Approval Order (Docket No. 95), the Court approved Plaintiff's proposed plan for notifying Class Members about the proposed Settlement and Plan of Allocation of settlement proceeds. Preliminary Approval Order, ¶¶7-9, 12. The Court held that the requirements of due process and Federal Rule of Civil Procedure 23 would be satisfied if the Plaintiff timely implemented the notice plan described in the Preliminary Approval Order. Preliminary Approval Order, ¶7. The Claims Administrator mailed individual copies of the Notice to those Class Members who could be identified with reasonable effort. *See* paragraph 10 to the accompanying Affidavit of Anya Verkhovskaya ("Verkhovskaya Aff."). The Claims Administrator also used diligent efforts to give notice to nominee purchasers (such as brokerage firms and banks) who purchased or acquired Fund shares during the Class Period as record owners but not beneficial owners, and the Claims Administrator also mailed out additional copies of the Notice to potential Class Members and their nominees in response to requests from those nominees. *Id*. at ¶¶4(a), 11. As of April 12, 2012, the Claims Administrator had mailed a total of 58,882 copies of the Notice to potential Class Members and their nominees. *Id*. at ¶12.[3] Further, a Summary Notice was published in the national edition of *Investor's Business Daily* and was transmitted over the *Business Wire*. Verkhovskaya Aff., ¶18. All of these steps were undertaken within the timeframe set forth in the Preliminary Approval Order. In addition, the Notice was placed on the website of the Claims Administrator. *Id.* at ¶15.

---

[3]     As counsel was finalizing their papers in support of their final approval submission, they were informed by Fidelity's counsel that the names of potential Class Members it provided inadvertently omitted the names of Fund shareholders who held shares at the beginning of the Class Period and received shares during the Class Period exclusively through the dividend reinvestment plan. Those Class Members are now being provided with notice and counsel will update the Court on the process. *See* Joint Decl., ¶¶53-54.

Plaintiff respectfully submits that the notice program implemented in the Litigation constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23. *See, e.g.*, *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (although direct mail was not used, a notice plan which included nationwide publication, posting of court-approved notices on website, and method for class members to have questions answered satisfied the requirements of Rule 23 and due process).

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.   The Settlement Before the Court

In complete settlement of the Litigation, Defendants agreed to pay $7.5 million in cash. These settlement funds were deposited in an escrow account on January 6, 2012, and have been earning (and will continue to earn) interest until distribution. *See* Joint Decl., ¶45. The settlement proceeds will be distributed to Class Members pursuant to the Plan of Allocation, as set forth in the Notice, after payment of settlement administration costs, reasonable attorneys' fees and expenses awarded by the Court, and time and expenses awarded to Lead Plaintiff.

### B.   The Standards for Judicial Approval of Class Action Settlements

It is well settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."). This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in

the future, after protracted and expensive litigation,' there are clearly strong arguments for approving a settlement.") (citation omitted).

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, adequate and reasonable, and in the best interest of the class. *See, e.g., Allen v. Decision One Mortg. Co., LLC*, No. 07-11669-GAO, 2010 WL 1930148, at *1 (D. Mass. May 12, 2010); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421-GZS, 2011 WL 1627939, at *2 (D. Me. Apr. 27, 2011); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005); *In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007).

In determining whether a proposed settlement is fair, adequate and reasonable, the First Circuit has not established a formal protocol, but the district courts therein routinely rely on the *Grinnell* factors which are as follows: "'(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Lupron*, 228 F.R.D. at 93-94 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors."). Moreover, courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left

unresolved.  *See, e.g., Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.  They do not decide the merits of the case or resolve unsettled legal questions.") (citation omitted).

When examined under the applicable criteria, the Settlement is a very good result for the Class.  Lead Counsel believe that there are serious questions as to whether a more favorable monetary result against Defendants could or would be attained after contested class certification and summary judgment motions, trial and the inevitable post-trial motions and appeals.  *See* Joint Decl., ¶¶65-68; *see also Rolland*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").  The Settlement achieves a substantial and certain recovery for Class Members and is unquestionably superior to the distinct possibility that were the Litigation to proceed to trial, there could be no recovery at all.  Analysis of the relevant factors demonstrates that the proposed Settlement warrants the Court's approval.

### C.     The Settlement Satisfies the Criteria for Approval

#### 1.     The Complexity, Expense, and Likely Duration of the Litigation

This factor "'captures the probable costs, in both time and money, of continued litigation.'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)).  Here, this factor strongly supports the fairness of the Settlement, because had the parties not reached an agreement to settle they would have faced prolonged and expensive litigation, including voluminous document productions, numerous depositions, extensive pretrial motions addressing complex factual and legal questions, class certification, oral arguments, and ultimately a

- 9 -

complicated, lengthy trial, followed by appeals; the outcome of which were all uncertain. Continued litigation would have caused Class Members who suffered economic losses between 2005 and 2008 to wait years longer for a resolution of their claims. In a class action of this sort, the time and expense leading up to trial would have been significant. Settlement, now, avoids that and provides an immediate cash benefit to Class Members.

### 2.     The Reaction of the Class to the Settlement

This factor "'attempts to gauge whether members of the class support the settlement.'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)). While it is significant that Lead Plaintiff is fully in support of the Settlement (*see id.* at *3), this factor can be analyzed only by comparing the number of objectors and opt-outs with the number of claimants. *Lupron*, 228 F.R.D. at 96; *see also* paragraph 9 to the accompanying Declaration of Dr. Alan J. Zametkin in Support of Application for Award to Representative Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) (in which Dr. Zametkin explains his support of the settlement). Reaction to a settlement is considered positive when the number of objectors is minimal compared with the number of claimants. *See Lupron*, 228 F.R.D. at 96. A small percentage of objections and opt-outs constitutes strong evidence that a settlement is fair and reasonable. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Here, as of April 12, 2012, Plaintiff has received no objections to and no valid opt-outs from the proposed Settlement. *See* Joint Decl., ¶54. Thus, this factor clearly weighs in favor of settlement approval.

### 3.     Stage of Proceedings and Extent of Discovery

This factor "'captures the degree of case development that class counsel [had] accomplished prior to settlement.'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *Cendant*, 264 F.3d 201 at

235).  This case was in litigation for more than three years before the Settlement was reached. During that time, Lead Counsel undertook a careful and unusually extensive investigation of Plaintiff's claims, including: the review and analysis of an enormous quantity of publicly available information about Defendants, the Fund and its underlying holdings of thousands of securities at various times; the identification and interview of numerous confidential witnesses; research of the (often developing and/or unsettled) law pertinent to the claims and defenses asserted in the Litigation; the drafting and filing of amended and second amended complaints; the successful opposition to a competing motion for appointment of lead plaintiff; two rounds of extensive motion to dismiss briefing; oral argument in connection with the appointment of lead plaintiff and Defendants' motion to dismiss the SAC; the substantial defeat of Defendants' motion to dismiss the SAC; ongoing communications and conferral with the Court-appointed Lead Plaintiff; the preparation of informal, written document requests to which Defendants produced relevant documents prior to the formal mediation; the drafting and exchange of detailed mediation statements and participation in good-faith settlement discussions with counsel for Defendants; the consultation with an experienced mutual fund damages expert; the careful review and analysis of approximately seven thousand pages of internal Fidelity documents; and the interview of two knowledgeable representatives in connection with the MOU's agreement that the parties would engage in confirmatory discovery prior to entering into the Stipulation.  *See* Joint Decl., ¶¶16-44.  Based on the foregoing, Lead Counsel adequately appreciated the merits of this Litigation before agreeing to the Settlement.  Thus, this factor weighs strongly in favor of the fairness and reasonableness of the Settlement.

### 4.    The Risks of Establishing Liability and Damages

This factor "'survey[s] the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004)).

Some of the risks that Plaintiff faces in the Litigation include: (i) Defendants could point to language in the disclosure documents which they contend put Class Members on notice of the risks associated with the Fund's significant investments in mortgage-backed securities; (ii) the jury could find that the housing crisis was unprecedented and caught even the most sophisticated financial firms by surprise, thus no known and foreseeable risk existed; or (iii) the amount of alleged damages could be resolved in favor of Defendants after a "battle of the experts." *See* Joint Decl., ¶67. The parties also disagree on: (i) the amount of alleged damages, if any, that could be recovered at trial; (ii) the other, non-actionable causes of the losses to the Fund during the relevant period; (iii) whether any allegedly false or misleading statements in the registration statements and prospectuses were the proximate cause of any investor losses; (iv) the extent that various facts alleged by the Plaintiff influenced the net asset value of the Fund during the relevant period; (v) whether the allegedly misstated facts were material, false, misleading or otherwise actionable under the securities laws; and (vi) whether Plaintiff's claims were barred by the applicable statute of limitations. *See* Joint Decl., ¶66. These various defenses could realistically result in no liability and zero recovery for the Class. Alternatively, due to a number of unsettled and outstanding legal issues, Plaintiff could potentially prevail at trial but still only be awarded damages of less than $10 million. *Id.* In the face of these significant risks, the Class obtained a meaningful all-cash settlement, providing support for the fairness of the Settlement.

700876_1

### 5. Maintaining the Class Action Throughout Trial

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial" because """"the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class action]."""" *StockerYale*, 2007 WL 4589772, at *3 (quoting *Warfarin*, 391 F.3d at 537).   At the time of settlement, no class certification had occurred in the Litigation, yet.   Moreover, the purported Class Period spans three years (June 6, 2005 to June 5, 2008, inclusive).   While concerns about the manageability of a large class of purchasers of Fund shares over a lengthy period of time does not pose a problem for the certification of a settlement class, there is a risk that such a lengthy class period would create difficult management problems if it were to become a litigation class.   *StockerYale*, 2007 WL 4589772, at *3.  Thus, the difficulties in maintaining this putative class, as currently defined, weighs in favor of settlement.

### 6. The Ability of Defendants to Withstand a Greater Judgment

This factor considers "'whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement.'"   *StockerYale*, 2007 WL 4589772, at *4 (quoting *Cendant*, 264 F.3d at 240).   Fidelity is one of the largest mutual fund companies in the country with substantial assets.   Lead Counsel knows of no evidence which suggests Defendants would be unable to pay a large judgment, although Fidelity's insurance coverage likely has certain limits and restrictions.   Nonetheless, further conduct of the Litigation would be protracted and expensive and in order to limit further inconvenience, distraction, negative impact and publicity on Fidelity's business, employees, and customers, it is desirable and beneficial to Defendants that the Litigation be settled.   *See* Stipulation, §II.

### 7.    The Settlement Offers a Meaningful Benefit to the Class

This factor "'evaluate[s] whether the settlement represents a good value for a weak case or poor value for a strong case.'"  *StockerYale*, 2007 WL 4589772, at *4 (quoting *Warfarin*, 391 F.3d at 538).  The $7.5 million settlement amount is well within the common recovery range for class actions of this sort.  Additionally, the Class is receiving a complete cash settlement that equates to a true benefit for the Class at relatively little expense.  Thus, this factor supports the fairness of the Settlement.

Accordingly, pursuant to Rule 23(e), the Court should approve this class action Settlement as fair, adequate, reasonable, and in the best interest of the Class.

## V.    THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD ALSO BE APPROVED

The Notice contains the Plan of Allocation detailing how the settlement proceeds are to be divided among eligible Class Members.  A trial court has broad discretion in approving a plan of allocation.  *See In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987).  The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable and adequate.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  In determining whether a proposed plan of allocation is fair, courts look primarily to the opinion of counsel.  *See id.* at 133 ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."); *see also White v. National Football League*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds).

- 14 -

Here, working with their damage consultant, Lead Counsel developed the Plan of Allocation of settlement proceeds that reflects their damage theory of the case in a simple and straightforward manner and will result in a fair distribution of the available proceeds among Class Members. Generally, the Plan of Allocation provides that Class Members will receive a portion of the Net Settlement Fund based on the percentage of that Class Member's investment or economic loss, as defined in the Notice, bears to the total investment or economic loss of all Class Members who submit valid, timely Proof of Claim forms.  In other words, the Plan of Allocation awards a pro rata share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss taking into account several factors including the timing of the purchases and sales of the Fund shares.  *See* Joint Decl., ¶¶55-64.  This simple formula is fair and reasonable, as there is no rule that a settlement benefit all class members equally.  *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (concluding "the plan of allocation, as a general matter, fairly treats class members by awarding a pro rata share to every Authorized Claimant").

Courts also consider the reaction of a class to a plan of allocation.  *See PaineWebber*, 171 F.R.D. at 126; *Maywalt v. Parker & Parsley Petroleum Co.*, No. 92 Civ. 1152 (RWS), 1997 WL 7668, at *4 (S.D.N.Y. Jan. 9, 1997) (plan of allocation approved as fair and equitable where no objections received).  The Notice described the proposed Plan of Allocation of settlement proceeds in detail and indicated that the deadline for objecting to the plan was April 27, 2012.  To date, no objections to the plan have been received.  Accordingly, since the Plan of Allocation is fair, reasonable and adequate, is recommended by experienced and competent counsel, and is not opposed by its beneficiaries it should be approved.

700876_1

## VI.     CONCLUSION

Based on the foregoing, the Joint Declaration and the entire record herein, Plaintiff

respectfully requests that the Court finally approve the Settlement and the Plan of Allocation of

settlement proceeds as fair, reasonable, and adequate and in the best interests of the Class.

DATED:  April 13, 2012                              Respectfully submitted,

SHAPIRO HABER & URMY LLP
THOMAS G. SHAPIRO (BBO # 454680)
ADAM M. STEWART (BBO # 661090)
53 State Street
Boston, MA  02109
Telephone:  617/439-3939
617/439-0134 (fax)
tshapiro@shulaw.com
astewart@shulaw.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART

_____
            s/ Ellen Gusikoff Stewart
            ELLEN GUSIKOFF STEWART

700876_1

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

DYER & BERENS LLP
ROBERT J. DYER
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

Co-Lead Counsel for Plaintiffs

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mfistel@holzerlaw.com

Additional Counsel for Plaintiffs

- 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to

the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non registered participants on April 13, 2012.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

700876_1